UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NICHOLAS WEIMER, an individual,

Plaintiff,

vs.

WELLS FARGO, SUSAN AND
GERALD LUNG,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 12-09296 MMM (JCGx)

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS; DENYING
DEFENDANT'S MOTION TO STRIKE AS
MOOT

On October 30, 2012, *pro se* plaintiff Nicholas Weimer filed this action against Wells Fargo Bank, N.A ("Wells Fargo") and two individual defendants, Gerald Lung and Rebecca[1] or Susan Lung.[2]  On January 31, 2013, Wells Fargo filed a motion to dismiss under Rule 12(b)(6)

---

[1]The caption names "Susan Lung," while the body of the complaint refers to "Rebecca Lung."

[2]Complaint, Docket No. 1 (Oct. 30, 2012).

of the Federal Rules of Civil Procedure.[3]  It also filed a motion to strike portions of the complaint,[4] accompanied by a request for judicial notice[5].  Plaintiff opposes both motions.[6]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In approximately 2005, Weimer entered into a mortgage loan agreement with "Express Capital (Countrywide Home Loans)."  The loan was secured by a deed of trust on property located at 814 S. Rimpau Blvd., Los Angeles, California 90005.[7]  Weimer alleges that Express Capital/Countrywide[8] used "bait and switch" tactics at closing, raising the interest rate it had formerly proposed by one-half percent.[9]  He also asserts that Express Capital "demanded and forced [him to] allow [it] to hold $7,400 (seven months['] reserve property taxes) in a special reserve account with a provision that it would pay the taxes when due."[10]

Weimer contends that in approximately May 2006, when he applied for a second mortgage, he learned that Express Capital had neither paid the property taxes nor established a reserve

---

[3]Motion to Dismiss Case ("MTD"), Docket No. 5 (Jan. 31, 2013).

[4]Motion to Strike Portions of Plaintiff's Complaint, Docket No. 6 (Jan. 31, 2013).

[5]Request for Judicial Notice re Motion to Strike Portions of Plaintiff's Complaint ("RJN"), Docket No. 7 (Jan. 31, 2013).

[6]Opposition to Wells Fargo's Motion to Dismiss ("Opp."), Docket No.17 (Apr. 1, 2013); Opposition to Wells Fargo's Motion to Strike Portions of Plaintiff's Complaint, Docket No. 21 (Apr. 15, 2013).

[7]Complaint, ¶ 7; RJN, Exh. 3 (Deed of Trust).  The paragraphs in the complaint are incorrectly numbered (6, 7, 7, 5, 6, 7); where necessary, the court includes the page number as an additional reference point.

[8]Plaintiff appears to use "Countrywide," "Express Capital," and "Capital Express" interchangeably when referring to the original lender.

[9]Complaint, ¶ 7.

[10]*Id.*, ¶ 5.

2

account.[11]  He asserts that "[a]s a result, GMAC[ ][12] [with]held $14,000.00 from the proceeds of the second [mortgage] to pay the property taxes."[13]  Plaintiff purportedly complained to Express Capital/Countrywide, at which point "instead of correcting the problem, Countrywide sold the loan to Wells Fargo."[14]  Wells Fargo then allegedly set up an impound account for the taxes.[15] Weimer refused to pay the amounts requested into the impound account, although he purportedly made regular and timely monthly mortgage payments.[16]  He alleges that the impound account was eventually removed, but that Wells Fargo did not return the $7,400 he had originally given Express Capital to cover tax payments until approximately August 2006.[17]

Weimer contends that Wells Fargo engaged in a pattern of fraudulent conduct, repeatedly reporting that his payments were more than 30 days late despite the fact that he always made payments "within the grace period."[18]  Wells Fargo also purportedly failed to cash submitted payments,[19] and, on at least one occasion, credited a payment to the wrong month.[20]  Weimer asserts that his credit was damaged as a result of this allegedly fraudulent conduct, that his interest

---

[11]*Id.*, ¶ 6.

[12]It is not clear what role GMAC played in the alleged events.  Weimer, however, appears to have sued GMAC in state court.  (RJN, Exh. H (First Amended Complaint, LASC Case No. BC418613).)

[13]Complaint, ¶ 6.

[14]*Id.*

[15]*Id.*, ¶ 7.

[16]*Id.*

[17]*Id.*, ¶ 8.

[18]*Id.*, ¶ 11.

[19]*Id.*, ¶ 10.

[20]*Id.*, ¶ 9.

rates rose, and that his business as a real estate investor was "virtually destroyed."[21]  He alleges that "as a result of Wells Fargo ruining [his] credit, [which] . . . prevent[ed] him from obtaining a home equity loan or refinancing in a timely manner . . . to reduce his overhead, [he] eventually became unable to make his [mortgage] payments and his property was [sold at] foreclosure. . . ."[22]

On July 31, 2009, plaintiff filed an action in Los Angeles Superior Court.[23]  His first amended complaint in that action asserted six claims related to the loan and property at issue in this case: injunctive relief prohibiting foreclosure and unclean hands; injunctive relief based on failure to comply with California Civil Code § 2923 et seq. and violation of Truth in Lending Act; breach of the implied covenant of good faith and fair dealing; fraud; intentional infliction of emotional distress ("IIED"); and violation of RICO.[24]  He named as defendants ASC, Wells Fargo, Bank of America, Countrywide, GMAC, and NDEX West, LLC.[25]  Weimer sought compensatory and punitive damages; a restraining order, preliminary injunction, and permanent injunction restraining the foreclosure sale; treble damages under RICO; and costs of suit.[26]  After commencing the action, Weimer filed numerous amended complaints.[27]  The last – a fifth amended complaint – asserted claims against ASC, Wells Fargo, and Bank of America for breach of the implied covenant of good faith and fair dealing, fraud, and IIED.[28]  The fifth amended complaint concerned the same loan, property, and allegedly wrongful acts that are alleged in the complaint he has filed in this court.  On May 12, 2011, the state court sustained Wells Fargo's demurrer to

---

[21]*Id.*, ¶ 12.

[22]*Id.*, ¶ 13.

[23]RJN, Exh. G (LASC Docket for Case No. BC 418613).

[24]*Id*, Exh. H (First Amended Complaint, Case No. BC 418613).

[25]*Id.*

[26]*Id.* at 9-10.

[27]MTD at 3.

[28]RJN, Exh. M (Fifth Amended Complaint, Case No. BC 418613).

the fifth amended complaint without leave to amend;[29] judgment was entered in its favor on September 13, 2011.[30] Weimer appealed to the California Court of Appeal,[31] which affirmed the decision below, stating that "there [were] defects in the complaint which prevent[ed] [Weimer] from stating any cause of action."[32] The court held that Countrywide's conduct prior to its entry into the loan could not form the basis for a cause of action against Wells Fargo.[33] It further held that Weimer's escrow account claims failed because Wells Fargo was permitted to establish such an account under the deed of trust.[34] It held that his claims relating to false credit reporting failed because he apparently refused to pay the amounts demanded, and because he failed to allege that "this negative credit reporting caused his alleged damages."[35] The court concluded that "all of the causes of action asserted against Wells Fargo fail[ed] because of these defects,"[36] including Weimer's claims for breach of the implied covenant of good faith and fair dealing, fraud, IIED, and RICO violations.[37]

On October 30, 2012, plaintiff filed a complaint in this court against Wells Fargo and the

---

[29]*Id.*, Exh. N (May 12, 2011 Minute Order, Case No. BC 418613).

[30]*Id.*, Exh. O (September 13, 2011 Judgment, Case No. BC 418613).

[31]*Id.*, Exh. P (Docket for Second Appellate District, Division One, Case No. B236385).

[32]*Id.*, Exh. Q (Court of Appeal's October 30, 2012 decision, Case No. B236385).

[33]*Id.*at 8.

[34]*Id.*

[35]*Id.*at 8-9.

[36]*Id.* at 10.

[37]Weimer appears to have asserted the RICO claim in his fourth amended complaint, and it was dismissed on demurrer. His appeal challenged not only the dismissal of his fifth amended complaint, but argued that the fourth amended complaint had stated a valid RICO claim. (RJN, Exh. Q at 10). The Court of Appeals disagreed. It stated that "for the reasons already discussed, these allegations do not state a [RICO] cause of action against Wells Fargo." (*Id.*)

individuals who purchased his home.[38] Once again, he seeks compensatory and punitive damages; a mandatory preliminary and/or permanent injunction reconveying the property to him; treble damages under RICO; and and costs of suit.[39] Like his state court complaints, Weimer's complaint in this action is based on Countrywide's conduct prior to the date his loan closed, as well as Wells Fargo's creation of an escrow account and its reporting of late payments.[40] Weimer pleads claims for unfair debt collection practices; unfair competition; fraud; IIED; defamation; breach of the implied covenant of good faith and fair; negligent misrepresentation; quiet title; and violation of RICO.

Defendant Wells Fargo filed a motion to dismiss the action on January 31, 2013.[41] It argues that plaintiff's complaint is barred in its entirety by the *Rooker-Feldman* doctrine and/or *res judicata.*[42] In addition, Wells Fargo all the claims individually, asserting that Weimer has failed to allege that he can tender the amount of the loan;[43] (2) that his allegations of inaccurate credit reporting are preempted by the Fair Credit Reporting Act ("FCRA");[44] that various applicable statutes of limitations have expired;[45] and (4) that Weimer has failed adequately to plead various elements of certain claims.[46]

---

[38]Complaint.

[39]*Id.* at 18-19.

[40]*Id.* at 3-8.

[41]MTD.

[42]*Id.* at 2.

[43]*Id.*

[44]*Id.*

[45]*Id.* at 3-5.

[46]*Id.*

1

## II.  DISCUSSION

2

**A.    Request for Judicial Notice**

3   Wells Fargo asks that the court take judicial notice of documents allegedly related to

4 Weimer's claims.  In deciding a Rule 12(b)(6) motion, the court generally looks only to the face

5 of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284

6 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

7 1542, 1555 n.19 (9th Cir. 1990).  It may, however, consider documents that are incorporated by

8 reference but not physically attached to the complaint if they are central to plaintiffs' claim and

9 no party questions their authenticity.  See *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)

10 (in ruling on a motion to dismiss for failure to state a claim "[a] court may consider evidence on

11 which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the

12 document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy

13 attached to the 12(b)(6) motion," citing *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994),

14 overruled on other grounds, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002));

15 *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n. 5 (9th Cir. 2003); *Chambers v.*

16 *Time Warner, Inc.*, 282 F.3d 147, 153 n. 3 (2d Cir. 2002)); see also *Sanders v. Brown*, 504 F.3d

17 903, 910 (9th Cir. 2007) ("Review is generally limited to the contents of the complaint, but a

18 court can consider a document on which the complaint relies if the document is central to the

19 plaintiff's claim, and no party questions the authenticity of the document," citing *Warren*, 328

20 F.3d at 1141 n. 5); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("If the

21 documents are not physically attached to the complaint, they may be considered if the documents'

22 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them," citing

23 *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)); *In re Silicon Graphics Inc.*

24 *Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999) ("[The incorporation by reference

25 doctrine] permits a district court to consider documents 'whose contents are alleged in a complaint

26 and whose authenticity no party questions, but which are not physically attached to the [plaintiffs']

27 pleading,'" quoting *Branch*, 14 F.3d at 454).

28   Defendant has asked that the court take judicial notice of: (1) the grant deed that was

recorded in the Los Angeles County Recorder's Office on August 13, 2004;[47] (2) the deed of trust recorded on August 17, 2005;[48] (3) the notice of default recorded April 8, 2009;[49] (4) the notice of trustee's sale recorded July 20, 2009;[50] (5) the notice of trustee's sale recorded March 2, 2010;[51] and (6) the trustee's deed upon sale recorded March 31, 2010.[52]

"Judicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).  Defendant has provided a reference number showing that each document it seeks to have noticed was recorded; this demonstrates that each is a public record.  See *Maguca v. Aurora Loan Services*, No. SACV 09-1086 JVS (ANx), 2009 WL 3467750, *2 n. 2 (C.D. Cal. Oct. 28, 2009) ("The Court takes judicial notice of the notice of default, as it is a public record"); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record.  As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were public records that were proper subjects of judicial notice); *Hutson v. American Home Mortgage Servicing, Inc.*, No. C 09-1951 PJH, 2009 WL 3353312, *3-4 (N.D. Cal. Oct. 16, 2009) (taking judicial notice of a deed of trust, notice of default and election to sell under deed of trust, notice of trustee's sale, and trustee's deed of sale, as the documents had been recorded in the official

---

[47]RJN, Exh. A.

[48]*Id.*, Exh. B.

[49]*Id.*, Exh. C.

[50]*Id.*, Exh. D.

[51]*Id.*, Exh. E.

[52]*Id.*, Exh. F.

records of Contra Costa County); *Heuslein v. Chase Bank U.S.A., N.A.*, No. 09-CV-1292-IEG (RBB), 2009 WL 3157484, *3 (S.D. Cal. Sept. 24, 2009) (taking judicial notice of a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale that had been recorded in the San Diego County Recorder's Office); *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust). As the complaint refers to or necessarily relies on these records concerning the property, and as neither party has disputed the authenticity of the records, the court will consider them in evaluating Wells Fargo's motion.[53]

Wells Fargo has also requested that the court take judicial notice of: (1) the docket in *Weimer v. Wells Fargo & Co., et al.*, Los Angeles Superior Court Case No. BC418613;[54] (2) Weimer's first amended complaint in that action;[55] (3) the state court's November 25, 2009 order;[56] (4) the state court's April 15, 2010  minute order;[57] (5) the state court's September 21, 2010 minute order;[58] (6) the state court's January 18, 2011 minute order;[59] (7) Weimer's fifth

---

[53]At the hearing, Weimer argued that the court should not take judicial notice of the deed of trust, since it does not reflect the full contractual agreement between him and the lender. As the document is publicly recorded, the court believes it is the proper subject of judicial notice. It notes, however, that it has not relied on the deed of trust in any manner in deciding the merits of Wells Fargo's motion; rather, it has cited the deed of trust simply to set forth the factual background of the case. As discussed *infra*, each of Weimer's claims is barred on procedural grounds, and consequently the deed of trust is not relevant to the court's legal analysis.

[54]*Id.*, Exh. G.

[55]*Id.*, Exh. H.

[56]*Id.*, Exh. I.

[57]*Id.*, Exh. J.

[58]*Id.*, Exh. K.

[59]*Id.*, Exh. L.

amended complaint filed February 7, 2011;[60] (8) the state court's May 12, 2011 minute order;[61] (9) the state court judgment entered September 13, 2011;[62] (10) the docket in *Weimer v. Wells Fargo & Co., et al.,* California Court of Appeal, Second Appellate District, Division One, Case No. B236385;[63](11) the Court of Appeal's unpublished October 30, 2012 decision;[64]and (12) the remittitur that issued December 19, 2012.[65]

A court can take judicial notice of documents filed in other courts, particularly where, as here, the documents relate to a similar action by the same plaintiff.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that was relevant in assessing whether plaintiff could assert claims in the pending action); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court action in which plaintiff had asserted similar and related claims); *Hott v. City of San Jose*, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and orders in state court cases).  Accordingly, the court will consider pleadings and orders filed in the state court action.

**B.   Whether Plaintiff's Claims are Barred by the *Rooker-Feldman* Doctrine**

Wells Fargo contends that Weimer's claims are barred by the *Rooker-Feldman* doctrine.[66] Under that doctrine, which takes its name from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), a district court does not have subject matter jurisdiction to

---

[60]*Id.*, Exh. M.

[61]*Id.*, Exh. N.

[62]*Id.*, Exh. O.

[63]*Id.*, Exh. P.

[64]*Id.*, Exh. Q.

[65]*Id.*, Exh. R.

[66]MTD at 2.

hear a direct appeal from a final judgment of a state court.  See *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003).  Thus, the losing party in state court is barred from seeking what in substance would be appellate review of a state court judgment in federal court, even if the party contends the judgment violated his or her federal rights.  *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 290-91 (2005); *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994); *Allah v. Superior Court*, 871 F.2d 887, 891 (9th Cir. 1989) (stating that the *Rooker-Feldman* doctrine "applies even though the direct challenge is anchored to alleged deprivations of federally protected due process and equal protection rights"), superseded by statute on other grounds as stated in *Schroeder v. McDonald*, 55 F.3d 454, 458 (9th Cir. 1995); *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986) ("This doctrine applies even when the challenge to the state court decision involves federal constitutional issues").

The rationale behind the *Rooker-Feldman* doctrine is threefold.  First, the only federal court with the power to hear appeals from state courts is the United States Supreme Court. *Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998).  Second, state courts are as competent as federal courts to decide federal constitutional issues.  *Worldwide Church of God*, 805 F.2d at 891.  Third, "any other rule would result in a waste of judicial resources and unnecessary friction between state and federal courts."  *Id.*

In 2005, the Supreme Court held that the *Rooker-Feldman* doctrine "is  confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions. "  *Exxon Mobil Corp.*, 544 U.S. at 284.  As the Ninth Circuit subsequently explained, "[p]reclusion, not *Rooker-Feldman*, applies when 'a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.'"  *Henrichs v. Valley View Development*, 474 F.3d 609, 614 (9th Cir. 2007) (quoting *Noel*, 341 F.3d at 1165); see also *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004) ("In

this case, Maldonado is not bringing a forbidden *de facto* appeal because he is not alleging as a legal wrong an erroneous decision from the state court"); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment").

As discussed in more detail *infra*, Weimer's claims are substantially identical to those he has previously filed in state court. While Weimer references the state court action and its result in his opposition to Wells Fargo's motion, and comments in passing on an error he believes the state court committed,[67] and while it is notable that the complaint in this action was filed the same day the Court of Appeal filed its opinion affirming the trial court, Weimer's complaint does not challenge the decision in the prior action. His alleged injuries do not result from any conduct of the state courts, but from the alleged wrongful conduct of defendants. Importantly, he does not explicitly seek relief from the state court judgment. As a result, the *Rooker-Feldman* doctrine is inapplicable. *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) ("[T]he applicability of the *Rooker-Feldman* doctrine turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court"); *Whitty v. First Nationwide Mortg. Corp.*, No. 05-CV-1021 H(BLM), 2007 WL 628033, *6-7 (S.D. Cal. Feb. 27, 2007) (claim preclusion, not *Rooker-Feldman*, applies when plaintiffs assert causes of action in a federal action that were previously litigated in a state action).

**C.    Whether Plaintiff's Claims are Barred by the Doctrine of *Res Judicata***

Wells Fargo argues that, given the outcome of the prior state court action, many of plaintiff's claims are barred by *res judicata*.[68]  "Under California law, the claim preclusion aspect of *res judicata*, also referred to as bar or merger, precludes the maintenance of a second suit between the same parties on the same cause of action so long as the first suit concluded in a final

---

[67]Opp. at 8.

[68]MTD at 2.

1    judgment on the merits." *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750

2    F.2d 731, 736–37 (9th Cir. 1984); see also *Robi v. Five Platters, Inc.*, 838 F.2d 318, 324 (9th

3    Cir. 1988) ("The application of claim preclusion in California focuses on three questions: (1) was

4    the previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve

5    the same 'claim' or 'cause of action'?").

6        To examine whether suits allege the same claim or cause of action, "California has

7    consistently applied the 'primary rights' theory, under which the invasion of one primary right

8    gives rise to a single cause of action." *Robi*, 838 F.2d at 324 (quoting *Slater*, 15 Cal.3d at 795);

9    see also *Crowley v. Katleman*, 8 Cal.4th 666, 681 (1994) ("The primary right theory is a theory

10   of code pleading that has long been followed in California.  It provides that a 'cause of action' is

11   comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant,

12   and a wrongful act by the defendant constituting a breach of that duty").  The "primary right"

13   analysis considers primarily the injuries or harm alleged. *Slater*, 15 Cal.3d at 795 ("Even where

14   there are multiple legal theories upon which recovery might be predicated, one injury gives rise

15   to only one claim for relief"); *Peiser v. Mettler*, 50 Cal.2d 594, 605 (1958) ("[T]he 'cause of

16   action' is based upon the harm suffered, as opposed to the particular theory asserted by the

17   litigant").

18       As noted, the state court sustained Wells Fargo's demurrer to plaintiff's fifth amended

19   complaint with prejudice.[69]  Other claims Weimer asserted were dismissed or stricken in earlier

20   state court orders.[70]  The California Court of Appeal affirmed the dismissal of Weimer's claims

21   on October 30, 2012,[71] holding that he had not stated a cause of action against Wells Fargo.[72]

22       Weimer's current complaint pleads several causes of action that were previously dismissed

[69]RJN, Exh. N (May 12, 2011 Minute Order, Case No. BC 418613).

[70]*Id.*, Exh's. I-L (Minute Orders, Case No. BC 418613).

[71]*Id.*, Exh. Q (Court of Appeal's October 30, 2012 decision, Case No. B236385).

[72]*Id.* at 8-10.

13

in state court. He does not deny that he is asserting several identical claims against the same defendant.  He contends, however, that because the state action was decided on demurrer, the claims were not adjudicated "on the merits."[73]  He cites no authority for this proposition, and it directly contradicts California law.  In California, "[a] judgment resulting from the sustaining of a general demurrer on the merits of a claim, rather than on a procedural ground, is a judgment on the merits." *Moore v. Navarro,* C 00-03213 MMC, 2004 WL 783104, *6 (N.D. Cal. Mar. 31, 2004) (citing *Palomar Mobilehome Park Ass'n v. San Marcos,* 989 F.2d 362, 364 (9th Cir. 1993); *Goddard v. Security Title Ins. & Guarantee Co.,* 14 Cal.2d 47, 52 (1939) (noting that a judgment based on "the sustaining of a general demurrer on a ground of substance . . . may be deemed a judgment on the merits, and conclusive in a subsequent suit; and the same is true where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action")).  The state court entered judgment in favor of Wells Fargo because Weimer failed to allege sufficient facts to plead viable claims.  The Court of Appeal held that "there [were] defects in the complaint which prevent[ed] [Weimer] from stating any cause of action."[74]  As a result, the case was resolved on the merits, and *res judicata* bars any of Weimer's current claims that arise from the same primary right; this includes claims he has merely reasserted in federal court.  *Moore*, 2004 WL 783104 at *6 ("Here, the judgment sustaining the demurrer to [plaintiff's] state court action was a judgment on the merits because it was an adjudication that the facts alleged could not state a cause of action. . . .  Thus, any claim in [plaintiff's] current complaint that is based on the same primary rights asserted in the state action is barred by the doctrine of res judicata" citing *Palomar Mobilehome Park Ass'n*, 989 F.2d at 364; *Goddard*, 14 Cal.2d at 52).

Weimer also contends that his complaint in this action pleads claims that were not litigated in state court: unfair debt collection practices, unfair competition/deceptive trade practices, and

---

[73]Opp. at 9

[74]RJN, Exh. Q at 8.

defamation.[75]  As a consequence, he asserts, without citation to authority, that these claims are not barred by *res judicata*.[76]  Weimer is incorrect.  "California, as does most states, recognizes that the doctrine of res judicata will bar not only claims actually litigated in a prior proceeding, but also claims that *could have been* litigated."  *Palomar Mobilehome Park Ass'n*, 989 F.2d at 364 (emphasis added).  To determine whether claims could have been litigated, the court must determine whether the new claims are based on or attempt to vindicate the primary right or rights underlying the state court claims.  *Robi*, 838 F.2d at 324; see also *Crowley*, 8 Cal.4th at 681; *Slater*, 15 Cal.3d at 795; *Peiser*, 50 Cal.2d at 605.

Whether or not Weimer's unfair debt collection practices, unfair competition, and defamation claims are adequately pled, they are barred by *res judicata*.  Weimer contends that his credit rating was damaged, that he had to pay higher interest rates, that he was unable to restructure his loan or invest in other real estate, that his real estate business was "destroyed," and that, due to these problems, he was unable to make mortgage payments and lost his home to foreclosure.[77]  All of these are injuries identified in the state court action.[78]  Moreover, Weimer seeks forms of relief here that are virtually identical to those he sought in state court; he also

---

[75]Opp. at 9.

[76]*Id*.

[77]Complaint, ¶¶ 12-13, 20, 37-38.

[78]See, e.g., RJN, Exh. M (Fifth Amended Complaint, Case No. BC 418613), ¶ 12 ("[O]ut of revenge and/or in concert with Countrywide Loans ASC began reporting plaintiff as being more than 30 days late in making monthly payments on his property when in fact plaintiff had not even incurred a late charge"); *id*., ¶ 18 ("[P]laintiff learned that ASC had now sent false information to TransUnion"); *id*., ¶ 24 ("Based upon the bad faith and fraudulent conduct of Wells Fargo ASC, plaintiff has been damaged in the following ways. . . .  Plaintiff was remodeling [his] house as an investment and had spent $50,000 to $100,000 renovating the house including his own labor. . . .  The plan was to refinance and buy a condominium which would reduce plaintiff's monthly overhead and increase cash flow [from rent payments]. . . .  The approximate seven to eight month total delay caused by Wells Fargo resulted in a complete destruction of plaintiff's business. Not only did plaintiff lose the property in question, but plaintiff was unable to make payments on a duplex").

identifies the same allegedly wrongful conduct as he did in the state action.[79]  Since plaintiff challenges the same actions, asserts the same injuries, and requests the same relief, even his new claims are based on the "primary rights" at issue in the state court action.  His claims in this action either were litigated and resolved against him, or could have been litigated.[80]  As a result, they are barred by the doctrine of *res judicata*.  See *Federation of Hillside and Canyon Associations*, 126 Cal.App.4th at 1202 (*res judicata* precludes not only "issues that were actually litigated but also issues that could have been litigated"); see also *Moore*, 2004 WL 783104 at *6

---

[79]In asserting that the court should exercise supplemental jurisdiction over his state law claims, moreover, Weimer's complaint pleads that his "federal and state claims derive from a common focus of operative facts *and are of such character that plaintiff would ordinarily be expected to try them in one judicial proceeding*."  (Complaint, ¶ 7) (emphasis added).  This allegation supports the conclusion that the recently-added claims concern the same primary right or rights as the claims litigated in state court and reasserted here.

[80]Plaintiff apparently sought leave to amend his state court action several times in an effort to add the new claims he asserts in this action.  This too supports a conclusion that the claims are based on the primary rights underlying his state court causes of action, and that they should properly have been part of that suit.  The fact that the state court denied Weimer leave to amend (see RJN, Exh. Q, (Court of Appeal's October 30, 2012 decision, Case No. B236385) is not pertinent to the "primary right" inquiry.  The new claims "could have been litigated" in the prior action, *Federation of Hillside and Canyon Associations v. City of Los Angeles*, 126 Cal.App.4th 1180, 1202 (2002), had Weimer complied with required procedural rules.

The court has been unable to locate a California case holding specifically that claims a plaintiff was denied leave to plead by amendment in a prior action are barred by *res judicata* (assuming the elements necessary for preclusion are otherwise satisfied).  This, however, is the law in the Ninth Circuit and a majority of other circuits.  *Mpoyo v. Litton Electro-Optical Systems,* 430 F.3d 985, 989 (9th Cir. 2005) ("Denial of leave to amend in a prior action based on dilatoriness does not prevent application of res judicata in a subsequent action.  Our holding in this case is consistent with case law in the First, Second, Third, Fifth and Eighth Circuits that bars under res judicata the subsequent filing of claims denied leave to amend").

At the hearing, Weimer asserted that he did not pursue the additional claims in state court because he was confused regarding the trial court's dismissal of his sixth amended complaint.  Specifically, he noted that the state court dismissed his sixth amended complaint with leave to amend certain claims, but subsequently indicated that it would not entertain the amended claims.  Even accepting Weimer's characterization of events as true, this does not provide a basis for declining to apply *res judicata* to the claims in this case.  If Weimer believed that the state court made an erroneous ruling, the proper vehicle to address that was an appeal to the California Court of Appeal.  This court lacks authority to review or correct alleged errors by the state trial court.

("If 'two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery.' Moreover, '[i]f the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not expressly pleaded or otherwise urged." quoting *Tensor Group v. City of Glendale,* 14 Cal.App.4th 154, 160 (1993)); see also *Monterey Plaza Hotel Ltd. Partnership v. Local 483 of the Hotel Employees and Restaurant Employees Union,* 215 F.3d 923, 928 (9th Cir. 2000) ("[*Res judicata*] also operates to bar any claims that could have been raised, not just those that actually were made").

Because each of Weimer's claims is a reiteration of one of his state court claims or based on the same primary rights as the claims asserted in the state court action, all are barred by *res judicata*. The court nonetheless provides additional grounds for dismissal of the claims that Weimer did not assert in state court, which allege unfair debt collection practices, unfair competition, and defamation.

**D.     Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)**

Even if Weimer's new causes of action were not barred by *res judicata*, they are not adequately pled. A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### 1.      Plaintiff's Unfair Debt Collection Practices Claim

The portion of the complaint that alleges Weimer's first claim for unfair debt collection practices does not identify any specific alleged statutory violation.  The pleading does, however, reference 15 U.S.C. § 1692k(d) – enacted as part of the Fair Debt Collection Practices Act ("FDCPA") –  as a basis for federal question jurisdiction.[81]  Wells Fargo argues that any claim under the FDCPA is time barred.[82]

To be held liable for violation of the FDCPA, a defendant must as a threshold requirement be a "debt collector" as that term is defined by the Act.  See *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); see also, e.g., *Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1146 (9th Cir. 1998); *Ines v. Countrywide Home Loans*, No. 08cv1267 WQH (NLS), 2008 WL 4791863, *2 (S.D. Cal. Nov. 3, 2008) ("To state a claim for violation of the FDCPA, a plaintiff must allege that the defendant is a 'debt collector' collecting a 'debt'").  The FDCPA defines "debt collector," in pertinent part, as

"any person who uses any instrumentality of interstate commerce or the mails in

---

[81]Complaint, ¶ 1.

[82]MTD at 13.

18

1    any business the principal purpose of which is the collection of any debts, or who

2    regularly collects or attempts to collect, directly or indirectly, debts owed or due

3    or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

4    Thus, a "debt collector" under the FDCPA is either (1) "a person" the "principal purpose" of

5    whose business is the collection of debts (whether on behalf of himself or others); or (2) "a

6    person" who "regularly" collects debts on behalf of others (whether or not it is the principal

7    purpose of his business).

8           The statute excludes from its scope "any person collecting or attempting to collect any debt

9    owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to

10   a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was

11   originated by such person; (iii) concerns a debt which was not in default at the time it was

12   obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a

13   commercial credit transaction involving the creditor."  15 U.S.C. § 1692a(6)(F).

14          Citing this provision, courts have concluded that mortgage lenders and servicers are not

15   "debt collectors" covered by the statute so long as they took assignment of an interest in the loan

16   prior to default by the debtor.  See *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.

17   1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does

18   not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as

19   long as the debt was not in default at the time it was assigned"); *Nool v. HomeQ Servicing*, 653

20   F.Supp.2d 1047, 1052-53 (E.D. Cal. 2009) (the definition of a debt collector "does not include

21   [a] consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as

22   the debt was not in default at the time it was assigned," citing *Perry*, 756 F.2d at 1208)*; Carillo

23   v. CitiMortgage, Inc.*, No. CV 09-02404 AHM, 2009 WL 3233534, *4 (C.D. Cal. Sept. 30,

24   2009).

25          Based on the allegations in the complaint, Wells Fargo does not qualify as a debt collector

26   since it purchased interest in plaintiff's loan prior to his default.  It is clear that, once it acquired

27   the loan, Wells Fargo did not transfer or assign it interest prior to default: the notice of default

28

1   states that America's Servicing Company ("ASC") is the beneficiary under the deed of trust,[83] and

2   Weimer repeatedly asserts that Wells Fargo and ASC are one and the same.[84]  Because Weimer's

3   allegations establish that Wells Fargo acquired its interest prior to Weimer's default,[85] and never

4   transferred that interest,[86] neither it nor its servicer, ASC, are "debt collectors" within the

5   meaning of the FDCPA.  See *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, Civ. No.

6   11–156–HZ, 2011 WL 3476648, *13 (D.Or. Aug. 8, 2011) ("[M]ortgage servicers are not debt

7   collectors . . . when the underlying loan is taken for servicing before the default"); *Au v. Republic

8   State Mortg. Co.*, No. 11–00251 JMS/KSC, 2012 WL 3113147, *13 (D. Haw. July 31, 2012)

9   (dismissing FDCPA claim where "Wells Fargo was not collecting debts of another, and the

10  [complaint does] not allege that the Mortgage debt is in default, much less that the Mortgage was

11  in default when it was assigned to Wells Fargo"); *Distor*, 2009 WL 3429700 at *5 ("Defendant

12  GreenPoint is correct that it cannot be a debt collector under the FDCPA, because GreenPoint is

13  the originator of the loan, and is simply attempting to collect its own debt.  Defendant GMAC is

14  also correct in that as a loan servicer it is also not a 'debt collector' within the meaning of the

15  FDCPA," citing *Perry*, 756 F.2d at 1208).  Accordingly, Weimer has failed adequately to allege

16  a key element of an FDCPA claim.  Nor does it appear he can do so.  Because he cannot state an

17  unfair debt collection practices claim, and because any such claim is barred by *res judicata*,

18  plaintiff's FDCPA claim is dismissed with prejudice.[87]  See *id.* at *6 (dismissing FDCPA claim

19

20      [83]RJN, Exh. C.

21      [84]Opp. at 15-16 ("ASC was the servicer of plaintiff's loan.  <u>ASC is not a separate entity

22  from Wells Fargo, just a separate department or dba.</u>  This is undisputed" (emphasis original)).

23      [85]Complaint at 3, ¶ 6.

24      [86]*Id.*, ¶¶ 13-16; Opp. at 7 ("Wells Fargo subsequently sold the property to Susan and

25  Gerald Lung . . .").

26      [87]The claim also appears to be time-barred.  Claims asserting violations of the FDCPA are

27  governed by a one-year statute of limitations.  15 U.S.C. § 1692k(d) ("An action to enforce any

    liability created by this subchapter may be brought in any appropriate United States district court

28  without regard to the amount in controversy, or in any other court of competent jurisdiction,

1  against originator and servicer of the loan with prejudice).[88]

2          **2.     Plaintiff's Defamation Claim**

3          Weimer alleges that Wells Fargo "intentionally and with malice falsely reported to credit

4  bureaus that [he] was late continuously and for a period of nine months[.]"[89] His opposition

5  verifies that this is an attempt to plead a defamation claim under California law.[90]  This claim –

6

---

7  within one year from the date on which the violation occurs").  Weimer fails to allege that any
   specific provision of the Act was violated, and does not identify the conduct that allegedly violated
8  the statute.  Nonetheless, he alleges no conduct whatsoever by Wells Fargo after it foreclosed on
9  the property in 2009.  Well more than a year passed before this suit was filed in October 2012.
   Weimer appears to assert that he suffered a "continuing injury" – i.e., damage to his credit due
10 to the foreclosure – and thus that the claim is not time-barred.  As Wells Fargo correctly notes,
   the authority he cites addresses continuing violations, not "continuing injuries."  Under Weimer's
11 construction, it is difficult to imagine what would *not* qualify as a "continuing injury," as he uses
12 the phrase to reference any harm not voluntarily corrected or recompensed.

13         The Ninth Circuit has recognized that in some circumstances, equitable tolling or the
   "discovery" rule may permit a plaintiff to circumvent the FDCPA's one-year limitation.  See
14 *Mangum v. Action Collection Service, Inc.*, 575 F.3d 935, 939 (9th Cir. 2009) (holding that
15 equitable tolling may apply in an FDCPA action, and applying the "general federal rule [that] 'a
   limitations period begins to run when the plaintiff knows or has reason to know of the injury
16 which is the basis of the action,'" citing *Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d
17 1260, 1266 (9th Cir. 1998)).  Here, however, it is apparent that Weimer knew the facts supporting
   his FDCPA claim on or before July 31, 2009, when he filed a state court action alleging the same
18 basic set of facts.  His current complaint does not plead any action taken by Wells Fargo after the
   2009 foreclosure, much less an action that could be construed as a violation of the FDCPA.  Thus,
19 plaintiff's claim for unfair debt collection practices under the FDPCA is time-barred.

20
        [88]The court notes that, at the time Wells Fargo purchased the loan from Countrywide,
21 GMAC had withheld $14,000 from the refinance loan to pay delinquent property taxes.  Thus,
   as alleged by plaintiff, neither mortgage payments nor tax payments were delinquent at the time
22 Wells Fargo purchased the loan.  Furthermore, it is not clear that Wells Fargo would qualify as
23 a debt collector even if it purchased a right to collect monies advanced to cover delinquent tax
   payments.  See *Corrinet v. Wells Fargo Bank-Nat. Ass'n*, No. 10–CV–6355-TC, 2011 WL
24 3798795, *4 (D. Or. Aug. 25, 2011) ("[P]laintiff's allegations do nothing more than establish that
25 Wells Fargo is a creditor of all monies advanced and not a debt collector under the FDCPA as a
   matter of law.  Advancing payments to cover the county property taxes did not covert Wells Fargo
26 into a debt collector, as that term is defined under the FDCPA").

27         [89]Complaint, ¶ 37.

28         [90]Opp. at 9.

21

which is based entirely on Wells Fargo's alleged furnishing of false credit reports – is preempted by the FCRA.  "[T]he FCRA contains two preemption sections restricting state law claims that apply to persons who furnish information under the FCRA."  *Woods v. Protection One Alarm Monitoring, Inc.*, No. 1:06-CV-00398-SMS, 2007 WL 2391075, *7 (E.D. Cal. Aug. 22, 2007).  "When first enacted in 1968, the FCRA had one section dealing with preemption of state law claims": 15 U.S.C. § 1681h(e).  *Weseman v. Wells Fargo Home Mortg., Inc.*, No. CV 06-1338-ST, 2008 WL 542961, *2 (D. Or. Feb. 22, 2008).  Section 1681h(e) provides:

> "Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action based in whole or part on the report except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).

The provision "only preempts state claims for defamation, invasion of privacy and negligence and only to the extent such claims are based on the disclosure of certain types of information and are not based on malice or willful intent to injure."  *Weseman*, 2008 WL 542961 at *2.

In 1996, Congress amended the FCRA to add another, more general preemption provision.  See *Weseman*, 2008 WL 542961 at *2.  Section 1681t(b)(1)(F) provides that

> "[n]o requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply – (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or (ii) with respect to section 1785.25(a) of the California

Civil Code (as in effect on September 30, 1996)."[91]  15 U.S.C. § 1681t(b)(1)(F).

Courts have recognized that there is an apparent tension between these two preemption provisions.  The district court in *Weseman* noted that "[i]f § 1681(b)(1)(F) is construed to preempt all state law causes of action against credit information furnishers, then § 1681h(e)[, which allows state law claims when plaintiff alleges malice or willful intent to injure,] is superfluous and effectively repealed."  *Weseman*, 2008 WL 542961 at *3.

"There is no Ninth Circuit authority attempting to reconcile the two apparently conflicting preemption statutes."  *Woods*, 2007 WL 2391075 at *7; see also *Weseman*, 2008 WL 542961 at *3 ("To date, neither the Ninth Circuit nor any other circuit court has addressed the scope of preemption under the FCRA").[92]  As a result, district courts have developed three different approaches to reconcile the provisions.  These are the "total preemption" approach, the "statutory" approach, and the "temporal" approach.  See *Weseman*, 2008 WL 542961 at *3; *Woods*, 2007 WL 2391075 at *7-8.  The differences between the approaches are as follows:

"'Under the 'total preemption' approach, [§ 1681]t(b)(1)(F) does indeed preempt all state law claims against furnishers of credit information arising from conduct regulated by [§] 1681s-2, thus effectively repealing the earlier preemption provision, [§] 1681h(e).  Under the 'temporal' approach, preemption depends on whether the cause of action arises before or after a credit information furnisher has notice of a consumer dispute.  Finally, under the 'statutory' approach, [§ 1681]t(b)(1)(F) preempts only state law claims against credit information

---

[91]"The two state statutes that are exempt from preemption by this section both involve the obligations of credit information furnishers to provide accurate information to credit reporting agencies."  *Weseman*, 2008 WL 542961 at *2.

[92]In 2009, the Ninth Circuit considered the interaction of the two provisions, calling it a "difficult issue of first impression."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1165, 1166 (9th Cir. 2009).  Although the court noted that "[a]ttempting to reconcile the two sections ha[d] left district courts in disarray," it did not reach the issue, concluding instead that Gorman could not prevail on his libel claim even under § 1681h(e), because he could not demonstrate malice or willful intent.  *Id*. at 1167.

furnishers brought under state statutes, just as [§] 1681h(e) preempts only state tort claims.'" *Weseman*, 2008 WL 542961 at *3 (quoting *Manno v. Am. Gen. Fin. Co.*, 439 F.Supp.2d 418, 424-25 (E.D. Pa. 2006)).

Courts in the Ninth Circuit have utilized both the "total preemption" and "statutory" approaches. The majority, however, has favored the "total preemption" approach, determining that § 1681t(b)(1)(F) totally preempts all "state statutory and common law causes of action which fall within the conduct proscribed under § 1681s-2." *Woods*, 2007 WL 2391075 at *9; see also *Weseman*, 2008 WL 542961 at *3 ("District courts in the Ninth Circuit have employed both the 'total preemption' and 'statutory' approaches, with the majority favoring the 'total preemption' approach"); *Schreiber v. Siemons*, No. C 07-2467 MJJ, 2007 WL 2344885, *3 n. 8 (N.D. Cal. Aug. 14, 2007) ("Although the Ninth Circuit has not yet ruled on this issue, 'the majority of district courts in the Ninth Circuit have held that the FCRA preempts state statutory and common law causes of action which fall within the conduct proscribed under § 1681s-2(a)," quoting *Pacheco v. Citibank*, No. C 07-01276 JSW, 2007 WL 1241934, *2 (N.D. Cal. Apr. 27, 2007); *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1181 (E.D. Cal. 2005) ("Because Plaintiffs' State Claims are based on alleged injury arising purely from the reporting of credit information by a furnisher of credit, they are completely preempted [by the FCRA]. Several courts that have analyzed this preemption clause concur" (citations and footnote omitted)); *Davis v. Maryland Bank*, No. 00-4191, 2002 WL 32713429, *13 (N.D. Cal. June 19, 2002) (holding that § 1681t(b)(1)(F) preempts all state claims falling within the coverage of § 1681s-2, including those involving malicious and willful tortious conduct).[93]

---

[93]But see *Weseman*, 2008 WL 542961 at *4 ("[T]his court is persuaded by the reasoning of the courts which adopt the 'statutory' approach. It is noteworthy that this is not the only court in which judges from the same district disagree on this issue"); *Gorman v. Wolpoff & Abramson, LLP*, 370 F.Supp.2d 1005, 1010 (N.D. Cal. 2005) (rejecting the total preemption approach because "it violates a canon of statutory construction by allowing a general statute to trump a specific statute"), rev'd in part, 584 F.3d 1147 (9th Cir. 2009); *Woods*, 2007 WL 2391075 at *11 (holding that a libel action could be maintained under § 1681h(e) if malice could be proved); *Abouelhassan v. Chase Bank*, No. C 07-03951 JF (PVT), 2007 WL 3010421, *4 n. 7 (N.D. Cal. Oct. 12, 2007) ("This Court agrees that § 1681t(b)(1)(F) should govern preemption of common

The court agrees with the majority's "total preemption" approach for the reasons set forth in *Davis*.  As the *Davis* court reasoned,

> "'[t]he plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting.  To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.'"  *Davis*, 2002 WL 32713429 at *13 (quoting *Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d 356 (E.D. Pa. 2001)).

The *Davis* court also observed that

> "the legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to create a uniform scheme governing the disclosure of credit information.  See *Kodrick v. Ferguson*, 54 F.Supp.2d 768, 794 (N.D. Ill. 1999) (discussing legislative history of FCRA's preemption provisions).  Allowing common law tort claims which implicate the same subject matter as section 1681s-2(1) would undermine Congress' intention to create a uniform system of protection for consumers."  *Id.*

See also *Roybal*, 405 F.Supp.2d at 1181.

The court finds this reasoning persuasive.  As the *Davis* court noted, the plain language of § 1681t(b)(1)(F) clearly bars the imposition of *any* state law requirement or prohibition on persons who furnish information to consumer reporting agencies; nothing in the provision limits its applicability to causes of action arising under state statutes.  The court observes, moreover, that Congress enacted the broader preemption provision set forth in § 1681t(b)(1)(F) after it passed § 1681h(e).  Presumably it was aware of the latter provision when it passed a law that on its face eliminated all state causes of action relating to the subject matter of § 1681s-2.  Congress could

---

law defamation and negligence claims, and therefore rejects Chase's blanket preemption argument. . .").

have expressly "saved" defamation from preemption under § 1681t(b)(1)(F), by enacting exceptions for those claims as it did for claims arising under section 54A(a) of chapter 93 of the Massachusetts Annotated Laws and California Civil Code § 1785.25(a).  It did not do so, however.

Accordingly, the court applies the "total preemption" approach, and finds that Weimer's defamation claim is preempted.  Section § 1681s-2(a) outlines various duties with which furnishers of information to credit reporting agencies must comply.  These duties, which are imposed to ensure the accurate reporting of consumer credit, include a requirement that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A).  Thus, a defamation claim alleging that a defendant furnished inaccurate information to a credit agency clearly falls within the field of conduct regulated by the FCRA.  Because Weimer's defamation claim is a state common law cause of action – which are totally preempted by the FCRA – the claim is preempted by § 1681.  It is thus dismissed with prejudice.  See *Mann v. Wells Fargo Bank*, No. C 12–03014 DMR, 2012 WL 3727369, *4 (N.D. Cal. Aug. 27, 2012) ("[T]he claim that forms the core of Plaintiffs' complaint is that Defendants reported inaccurate information to CRAs and failed to remedy Plaintiffs' request for corrections.  Plaintiffs' allegations put their negligence, defamation, and invasion of privacy claims within the purview of section 1681 s–2, because they clearly involve duties and responsibilities required of furnishers of credit information.  Because the wrongful conduct is regulated under section 1681s–2, section 1681t(b)(1)(F) applies to preempt Plaintiffs' negligence, defamation, and invasion of privacy claims despite their allegations that Defendants acted with malice and/or the willful intent to injure"); *Ali v. Capital One*, No. 1:11–cv–02115–LJO–SKO, 2012 WL 260023, *5 (E.D. Cal. Jan. 27, 2012) (holding that "15 U.S.C. § 1681t(b)(1)(F) preempts defamation claims based on allegations that a furnisher of information provided false or inaccurate information to a consumer reporting agency"); *Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F.Supp.2d 1207, 1215 (E.D. Cal. 2008) (applying the "total preemption" approach to find a defamation claim preempted by FCRA); see also *Macpherson v. JP Morgan Chase Bank*, 665 F.3d 45 (2d

Cir. 2011) (holding that the FCRA preempted state common law claims for defamation).[94]

### 3.     Plaintiff's Unfair Competition Claim

Weimer also alleges that Wells Fargo violated California's Unfair Competition Law, Business & Professions Code § 17200 ("UCL").[95]  This claim incorporates by reference all prior allegations and offers a boilerplate recitation of the elements of a UCL claim.[96]  As a consequence,

---

[94]Furthermore, as California defamation claims are subject to a one-year statute of limitations, it appears that Weimer's claim is also time-barred.  CAL. CODE CIV. PROC. §340(c). The only acts that Weimer asserts were defamatory – i.e., false credit reporting – occurred in 2006, well more than a year before he filed this action.  California law recognizes that "the accrual of the cause of action for defamation [may be] delayed by the discovery rule." *Hebrew Academy of San Francisco v. Goldman*, 42 Cal.4th 883, 893 (2007).  The discovery rule provides that "the limitations period does not accrue until the aggrieved party has notice of the facts constituting the injury." *Penney v. Wells Fargo Bank, NA*, No. 2:11–cv–05567–ODW (MANx), 2012 WL 2071705, *14 (C.D. Cal. June 8, 2012) (quoting *E-Fab, Inc. v. Accountants, Inc. Serv.*, 153 Cal.App.4th 1308, 1318 (2007)).  To invoke the delayed discovery rule, a plaintiff must "specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Penney*, 2012 WL 2071705 at *14 (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005)); see also *E-Fab, Inc.*, 153 Cal.App.4th at 1319 ("A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence").  The face of the complaint in this case makes clear that Weimer knew of the allegedly false reports about his credit in 2006.  (Complaint, ¶ 11 (alleging that "in approximately May or June of 2006" ASC "would report to credit bureaus that another [payment[ was more than 30 days late," and after "six months of said fraudulent conduct and threats of lawsuits against ASC and the credit bureaus, plaintiff sent the credit bureaus approximately four months of bank statements")).  This allegation shows that Weimer knew of the false reporting –  and even threatened legal action concerning it – no later than 2006.  As a consequence, he cannot rely on the discovery rule to argue that the claim is timely.  Moreover, as noted, Weimer filed his first state court action – alleging the same general facts alleged here – in 2009.  This too indicates that he knew the factual basis for his claims several years prior to filing an action in federal court. Thus, in addition to being barred by *res judicata* and preempted by the FCRA, Weimer's defamation claim is time-barred.  This provides an additional basis for dismissing the claim with prejudice. See *Fenters v. Yosemite Chevron*, No. CV-F-05-1630 OWW/DLB, 2006 WL 2016536, *23-24 (E.D. Cal. July 17, 2006) (dismissing a time-barred defamation claim with prejudice).

[95]Complaint, ¶ 19

[96]*Id.*, ¶ 18.

27

it fails to put Wells Fargo on notice of the specific conduct that purportedly violated the UCL. Courts have found that such vague, broad and conclusory pleading is insufficient to state a claim for relief. See *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 802 F.Supp.2d 1078, 1087-88 (N.D. Cal. 2011) ("Plaintiff merely incorporates 'paragraphs 1–71 of this Complaint,' and asserts that the facts alleged therein constitute 'unlawful, unfair and/or fraudulent activities under Cal. Bus. and Prof. Code § 17200 and/or common law.' . . . This Court has previously found that this type of vague, broad and conclusory pleading is insufficient to state a claim for relief," citing *Rashdan v. Geissberger*, No. 10-634, 2011 WL 197957, *10 (N.D. Cal. Jan. 14, 2011) ("[I]ncorporating the preceding 188 paragraphs of the Complaint fails to provide Defendants with 'fair notice' of the basis of Plaintiff's [ ] claim")).

Weimer's failure to specify the basis for the claim is particularly significant here, because his core allegations concern Wells Fargo's inaccurate credit reporting.  A UCL claim based on such conduct – like a defamation claim – is preempted by the FRCA.  Because Weimer has not identified any other allegedly wrongful conduct on which his UCL claim might be based, and because the court has opted to follow the total preemption approach, Weimer's UCL claim is preempted.  See *Howard v. Blue Ridge Bank*, 371 F.Supp.2d 1139, 1143-44 (N.D. Cal. 2005) (dismissing plaintiff's UCL claim on the grounds that Congress intended the FCRA to be the sole remedy against furnishers); see also *Jaramillo*, 155 F.Supp.2d at 361-62 ("[I]t is clear from the face of section 1681t(b) that Congress wanted to eliminate *all* state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies.  Any other interpretation would fly in the face of the plaint meaning of the statute" (emphasis added)).[97]

---

[97]It appears from the face of the complaint that Weimer's claim is also time-barred.  UCL claims are governed by a four-year statute of limitations.  CAL. BUS. & PROF. CODE § 17208.  The alleged false credit reporting (and indeed all of Wells Fargo's allegedly wrongful acts) occurred in 2006, more than four years prior to the commencement of this action.  *Khan v. World Savings Bank, FSB*, No. 10–CV–04305–LHK, 2011 WL 133030, *4 (N.D. Cal. Jan. 14, 2011) ("Ordinarily, a UCL cause of action accrues at the time when the wrongful act was done and liability arises"); see also *Just Film, Inc. v. Merchant Services, Inc.*, No. C 10–1993 CW, 2011 WL 3809908, *8 (N.D. Cal. Aug. 29, 2011) (dismissing a time-barred UCL claim with prejudice).  As noted, the facts alleged in the complaint make clear that Weimer discovered the

1   Accordingly, the court would be required to dismiss Weimer's UCL claim even if it were

2   not barred by *res judicata*. *Patacsil v. Wilshire Credit Corp.*, No. 09-1660, 2010 WL 500466,

3   *7 (E.D. Cal. Feb. 8, 2010) (dismissing a UCL claim that incorporated by reference all prior

4   allegations in the complaint, as the plaintiffs "[did] not identify which specific behaviors they

5   believe are punishable under the UCL"); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-5780,

6   2009 WL 1299698, *6 (N.D. Cal. 2009) (granting defendants' motion for more definite statement,

7   because plaintiff's UCL claim merely alleged that defendants engaged in "unlawful, unfair, and/or

8   fraudulent business acts or practices," and incorporated all prior allegations by reference); *Wang*

9   *v. Asset Acceptance, LLC*, 681 F.Supp.2d 1143, 1150 (N.D. Cal. 2010) ("Since the UCL would

10  impose an independent requirement or prohibition on furnishers of information to CRAs, it is

11  preempted by the FCRA. . . .  Because alleging other facts will not cure the deficiency, the Court

12  dismisses Wang's [UCL] cause[ ] of action without leave to amend"); *Miller v. Bank of America,*

13  *Nat. Ass'n*, 858 F.Supp.2d 1118, 1124 (S.D. Cal. 2012) ("[T]he FCRA preempts claims brought

14  under California's UCL insofar as they relate to the responsibilities of furnishers of credit

15  information governed by section 1681s–2 of the FCRA. . . .  Accordingly, Plaintiff's UCL claim

16  is dismissed with prejudice because amendment would be futile").[98]

17  ───────────────────

18  facts supporting his claim in 2006.  There thus appears to be no basis for tolling the statute of

19  limitations.

20      [98]Weimer contends his unfair competition claim is asserted "under both federal and state
    law." (Opp. at 17).  Neither his complaint nor his opposition references any statute or common

21  law doctrine relevant to the claim other than Business & Professions Code §§ 17200, *et seq.*,
    however.  It appears, moreover, that there is no general federal common law of unfair

22  competition.  See *Tecnomatic, S.p.A. v. Remy, Inc.*, No. 1:11–cv–00991–SEB–MJD, 2012 WL

23  2376066, *14 (S.D. Ind. June 22, 2012) ("[C]ourts have never recognized a federal common law
    claim for general unfair competition," citing *International Order of Job's Daughters v. Lindeberg*

24  *and Co.*, 633 F.2d 912, 915 (9th Cir. 1980) (the "parties have apparently assumed the existence

25  of a general common law governing all trademark infringement cases brought in federal court.
    This assumption is incorrect.  Save as an outgrowth of federal statutory or constitutional law, there

26  is no federal common law").  Because the complaint fails to allege that any of Wells Fargo's
    conduct violated a federal statute or common law doctrine prohibiting unfair competition, the court

27  analyzes the claim only under California's UCL. See, e.g., *Van Slyke v. Capital One Bank*, C

28  07-00671 WHA, 2007 WL 3343943, *16 (N.D. Cal. Nov. 7, 2007) ("Because these allegations

1

2

                              **III.  CONCLUSION**

3          For the reasons stated, the court grants Wells Fargo's motion to dismiss the complaint with

4    prejudice.[99]

5

6    DATED: May 14, 2013

7                                                 MARGARET M. MORROW
                                                  UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
_____
26   are not part of the complaint at this time, they will not be considered here").

27          [99]Because the entire action against Wells Fargo is dismissed with prejudice, its motion to

28   strike portions of the complaint is denied as moot.